## Town of Lakeville *vs.* City of Cambridge.

Plymouth.     October 5, 1939. — February 26, 1940.

Present: Field, C.J., Lummus, Qua, & Dolan, JJ.

*Needy Person. Settlement. Domicil. Evidence,* Presumptions and burden of proof. *Practice, Civil,* Auditor: findings; Ordering verdict. *Words,* "Reside."

In an action by a municipality to recover the amount of relief furnished to a needy person alleged to have a settlement in the defendant municipality, it being conceded that the needy person had once had such a settlement, the burden was on the defendant to establish a defence that the settlement had been defeated by his "failure for five consecutive years . . . to reside" therein within G. L. (Ter. Ed.) c. 116, § 5.

At a trial upon the report of an auditor whose findings were not to be final and were not contradicted by evidence, if his subsidiary findings warranted both a conclusion which he reached against the party having the burden of proof and the contrary conclusion, a verdict could

not properly be ordered in favor of either party and the case should be submitted to the jury.

Although an auditor, whose findings were not to be final, concluded that one who had had a settlement in a city did not fail "to reside" therein for five consecutive years so as to defeat such settlement under G. L. (Ter. Ed.) c. 116, § 5, subsidiary findings, not contradicted by other evidence, that, after being discharged from a tuberculosis sanatorium operated by the Commonwealth in a town, he became employed by and lived at the sanatorium so that "his case could be watched" and continued so for more than five years, during which time he intended to return to the city if he could secure a position there, otherwise "to go wherever a good position could be found," warranted the conclusion that he did fail so "to reside," and required submission of that issue of fact to the jury.

CONTRACT. Writ in the Superior Court dated September 6, 1935.

The action was referred to an auditor whose findings were not to be final and who found for the plaintiff. A motion by the defendant for a directed verdict was denied by *Beaudreau*, J., who ordered a verdict for the plaintiff. The defendant alleged exceptions.

The case was submitted on briefs.

*J. A. DeGuglielmo*, Assistant City Solicitor, for the defendant.

*F. Clark, Jr.*, for the plaintiff.

LUMMUS, J. This is an action of contract by a town furnishing immediate comfort and relief to one Earley, his wife, and her four children by a former husband, against the city in which, the plaintiff contends, Earley had a settlement, to recover $733.98 spent in furnishing such comfort and relief. G. L. (Ter. Ed.) c. 117, § 14. The following facts appear in the report of an auditor.

Earley, a pharmacist, resided in Cambridge continuously from 1904 to June 19, 1925. It is conceded that on the last mentioned date he had a settlement in Cambridge. On that date he was suffering from tuberculosis and became a patient at the Lakeville State Sanatorium at Lakeville, an institution operated by the Commonwealth. G. L. c. 17, §§ 4, 8, 9. While a patient he remained settled in Cambridge, for "The time during which a person shall be an inmate of any . . . public or state institution, within the common-

wealth, . . . shall not be counted in computing the time either for acquiring or for losing a settlement . . . ." G. L. c. 116, § 5. G. L. (Ter. Ed.) c. 116, § 5, and intermediate statutes cited. *Needham* v. *Fitchburg*, 237 Mass. 354. *Treasurer & Receiver General* v. *Fitchburg*, 237 Mass. 359. The defendant makes no contention to the contrary.

On April 4, 1926, his disease was deemed arrested, and he was discharged from the sanatorium as a patient. He had been advised by the assistant superintendent of the sanatorium to "stay where his case could be watched." On April 5, 1926, in pursuance of an arrangement made before his discharge as a patient, he became employed by the sanatorium as a laboratory assistant, receiving board, lodging and a small weekly salary. Up to the time of his marriage on August 4, 1931, he continued to work at the sanatorium, although for four or five Saturdays and Sundays in each year, when apparently he was free from duty at the sanatorium, he went to Cambridge to work for his former employer, staying over night at a hotel. The auditor finds that during this period "he intended to return to Cambridge if a position could be found there and, if not, he intended to go wherever a good position could be found." In 1928 or 1929 he was assessed a poll tax by the town of Lakeville, but the tax was abated because of his claim to be a resident of Cambridge. He was not assessed in Cambridge nor was he on the voting list there, after 1924. Earley testified that prior to his marriage he never intended to make Lakeville his home.

The statute in force during the period in question provided that "failure for five consecutive years by a person, after reaching the age of twenty-one, to reside in a town where he had a settlement, shall defeat" the settlement. The statute continued: "The time during which a person shall be an inmate of any . . . public or state institution, within the commonwealth or in any manner under its care or direction, or that of an officer thereof, . . . shall not be counted in computing the time either for acquiring or for losing a settlement . . . ." St. 1922, c. 479. St. 1925, c. 34. St. 1926, c. 292. St. 1931, c. 394, § 211. G. L. (Ter. Ed.)

c. 116, § 5. These statutes cited changed the law as declared in *Lanesborough* v. *Ludlow*, 250 Mass. 99. In these statutes the word "reside" means "have his domicil." *Plymouth* v. *Kingston*, 289 Mass. 57, 60. *Marlborough* v. *Lynn*, 275 Mass. 394. *Palmer* v. *Hampden*, 182 Mass. 511. The record does not show when Earley attained his majority, but we assume in the absence of suggestion to the contrary that he was of full age at all material times. The original statute from which the words "under its care or direction" were derived, makes plain that those words refer to the care or direction of a public or State institution, and not to the care or direction of the Commonwealth. St. 1914, c. 323. The provisions of that statute were incorporated into later statutes in a form that lent grammatical plausibility to the opposite construction; but there was no intent to change the law.

Since the period of relief began September 14, 1933, and ended with the date of the writ, September 6, 1935, it is obvious that any loss of Earley's settlement in Cambridge by his being domiciled for five consecutive years in Lakeville necessitated the acquisition of a domicil in Lakeville before his marriage on August 4, 1931. How long before, need not be determined with exactness, for his situation was substantially the same from the time of employment to the time of marriage. The burden of proof was on the defendant to prove that Earley acquired a domicil in Lakeville before his marriage. *Plymouth* v. *Kingston*, 289 Mass. 57, 61. See also *Commonwealth* v. *Bogigian*, 265 Mass. 531, 538; *Commonwealth* v. *Davis*, 284 Mass. 41, 49. It is conceded that the settlement of Earley's wife and her children followed that of Earley. G. L. (Ter. Ed.) c. 116, § 1, Second, Third.

When the case came on for trial by jury, the plaintiff introduced the auditor's report and rested. The defendant introduced certain evidence that did not tend to vary any of the auditor's findings, and rested. Each party then moved for a directed verdict in its favor. The motion by the defendant was denied, subject to its exception. There was no error in this denial, for the defendant had the bur-

den of proof, and the finding that Earley acquired no domicil in Lakeville prevented any ruling of law to the contrary. Instead of submitting the case to the jury in the hope that their verdict might settle the controversy, the judge directed a verdict for the plaintiff, subject to the defendant's exception. That direction cannot be supported if any of the subsidiary findings or recitals of evidence in the auditor's report warranted an inference of fact contrary to the ultimate finding of the auditor that Earley had not acquired a domicil in Lakeville prior to his marriage. *Cook* v. *Farm Service Stores, Inc.* 301 Mass. 564. Whether such a contrary inference was warranted is the only question remaining for decision.

In order to acquire a domicil in Lakeville, it was not necessary for Earley to determine to make that town his permanent home. It was enough for him to live there with the intention of remaining for an indefinite period and without any fixed or certain purpose to return to Cambridge. *Whitney* v. *Sherborn*, 12 Allen, 111. *Wilbraham* v. *Ludlow*, 99 Mass. 587. *Palmer* v. *Hampden*, 182 Mass. 511. *Barron* v. *Boston*, 187 Mass. 168, 170. *Winans* v. *Winans*, 205 Mass. 388, 391. *Tuells* v. *Flint*, 283 Mass. 106, 109. *Commonwealth* v. *Davis*, 284 Mass. 41, 50. *Plymouth* v. *Kingston*, 289 Mass. 57, 60. *Moscow* v. *Solon*, 136 Maine, 220. We cannot say that a jury could not have inferred from the facts stated in the auditor's report that while living at the sanatorium as an employee Earley had no fixed or certain purpose to return to Cambridge. It could not have been ruled as matter of law that during the period in question he was "in any manner under" the "care or direction" of the sanatorium or of "an officer thereof," even though his motive in seeking employment there was to "stay where his case could be watched." The record of the sanatorium shows but one treatment from the beginning of his employment until August 22, 1933, and that was during a period of twelve days in April, 1926, when he was confined to his bed with a severe attack of intercostal neuralgia. See *Hewey* v. *Metropolitan Life Ins. Co.* 100 Maine, 523, 528. There was error, in our opinion,

in withdrawing the case from the consideration of the jury.

It may be added, that no similar case is likely to arise, because by St. 1933, c. 213, redrafting G. L. (Ter. Ed.) c. 116, § 2, it was provided that "No former patient of a state or county tuberculosis sanatorium or hospital, who is employed in such an institution, shall lose or gain a settlement or be in the process of losing or gaining a settlement while so employed."

*Exceptions sustained.*